## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## BOSTON DIVISION

KINSALE INSURANCE
COMPANY,

      Plaintiff,

v.                                       CASE NO:

R GREENLEAF ORGANICS, INC.,
REYNOLD GREENLEAF & ASSOCIATES
LLC, WILLIAM N. FORD, SR.,
JOHN CHRISTOPHER ROMERO, and
WILLIAM FRANCIS GALVIN,
Secretary of the Commonwealth of
Massachusetts,

      Defendants.

_____/

## COMPLAINT FOR DECLARATORY RELIEF

KINSALE INSURANCE COMPANY ("Kinsale") files suit against R. GREENLEAF ORGANICS, INC. ("RGO"), REYNOLD GREENLEAF & ASSOCIATES, LLC ("RGA"), WILLIAM N. FORD, SR., JOHN CHRISTOPHER ROMERO ("Romero"), and WILLIAM FRANCIS GALVIN as Secretary of the Commonwealth of Massachusetts ("Galvin"), and in support alleges:

## NATURE OF ACTION

1.      This is an action for declaratory relief under 28 U.S.C. § 2201. At issue is whether Kinsale owes coverage for a 2018 claim under its under 2020 claims-made and reported insurance policies, among other reasons. As a matter of law, Kinsale does not owe coverage.

## JURISDICTION AND VENUE

2.      Jurisdiction exists under 28 U.S.C § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of attorney's fees, interests, and costs.

3.      Venue is proper in this district because the related underlying action is pending in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district. *See* 28 U.S.C. § 1391(b) (1) and (2). There is no alternative forum with compulsory jurisdiction over all the parties.

4.      All conditions precedent have occurred, been performed, or have been waived.

## THE PARTIES

5.      Kinsale is an Arkansas corporation with its principal place of business in Richmond, Virginia. In this action, Kinsale issued claims made and reported insurance policies to RGO and RGA.

6.      RGO is a New Mexico non-profit corporation with its principal place of business in Albuquerque, New Mexico. RGO seeks coverage from Kinsale for the underlying claims.

7.      RGA is a New Mexico limited liability corporation with its principal place of business in New Mexico. RGA also seeks coverage from Kinsale for the underlying claims.

8.      Ford is a resident of the New Mexico. Ford seeks coverage under Kinsale's policies as an "insured."

9.      Romero is a resident of New Mexico. Romero seeks coverage under Kinsale's policies as an "insured."

10.     Galvin is a resident of Massachusetts. The underlying plaintiff alleges that Galvin, as the Secretary of the Commonwealth of Massachusetts, improperly approved the articles of revival and reincorporation of the Ann Wigmore Foundation, Inc. with RGO and RGA.

## THE FIRST LAWSUIT

**Origins of the Ann Wigmore Foundation.**

11.     On December 21, 2018, Lavendar and the Foundation (collectively, "Plaintiffs") sued RGO, Sterling, Ford, Romero, Jessica Hatfield, Carl Scott Tillman, Maurice Sandiferr, and

the New Mexico Secretary of State, in The Thirteenth Judicial District Court in Cibola County, New Mexico, bearing Case No. D-133-CV-2018-00395.

12.     The Ann Wigmore Foundation, Inc. ("Foundation") was a Massachusetts non-profit corporation promoting healthy living through the use of uncooked foods. (*See Am. Compl.*, attached as Ex. A, ¶ 2.)

13.     Its founder, Ann Wigmore, wrote books promoting the healthy living mission of The Foundation. (*Id.*, ¶22, 26.) She obtained a LivingFoodsLifestyle® trademark, which she transferred to the Foundation.  (*Id.*, ¶22, 31, 33.)

14.     After Ms. Wigmore passed away, the Foundation's operations were relocated to San Fidel, New Mexico. (*Id.* ¶34.)

15.     The Foundation purchased 21 acres of land in San Fidel containing several buildings where classes were taught. (*Id.* ¶36-37.)

16.     Susan Lynn Lavendar-Baran began operating the Foundation. (*Id.* ¶14.)

**Lavendar attempts to sell the San Fidel property.**

17.     During her tenure, Lavendar failed to file annual reports for the Foundation in Massachusetts and New Mexico causing the non-profit status to be revoked in both states. (*Id.* ¶52-54.)

18.     In 2018, Lavendar attempted to sell the San Fidel property. (*Id.* ¶57.)

19.     In November 2018, William Ford expressed an interest in purchasing the property. (*Id.* ¶39.)

20.     Ford is the president, CEO, and managing director of RGO. He is also the managing director of RGA. (*Id.* ¶19.)

21.     RGO is a licensed medical cannabis producer and distributor in New Mexico.

**Ford merged the Foundation with Sterling and acquired the San Fidel property.**

22.   RGA is a consulting company for the cannabis industry, including for RGO.

23.   The Sterling Foundation, Inc. ("Sterling") is a nonprofit entity established for the advancement of plant science and treatment of addiction.

24.   Ford is the chairman of Sterling's board.

25.   Romero is a director of Sterling and the Chief Science Officer for RGA.

26.   Ford and RGO allegedly "conceived a plan to seize control of the lands and other assets of" the Foundation. (*Id.*, ¶22.)

27.   Ford and RGO revived the non-profit status of the Foundation in Massachusetts and merged it with Sterling.

28.   The merger with Sterling was approved by the Secretary of State of the Commonwealth of Massachusetts. (*Id.*, ¶22-29.)

29.   Ford and RGO reinstated the non-profit status of the Foundation in New Mexico and merged it with Sterling. The New Mexico Secretary of State also approved the merger. (*Id.*, ¶23, 29, 33.)

30.   Sterling is the surviving corporation and the Foundation no longer exists. (*Id.*, ¶33.)

31.   Lavendar was not able to reinstate the non-profit status of the Foundation in either Massachusetts or New Mexico. (*Id.*, ¶37.)

**Lavender sued Ford, RGO, and Romero in New Mexico.**

32.   On November 7, 2019, an amended complaint was filed against the defendants.

33.   The crux of the amended complaint is that RGO, Ford, and Romero conspired to revive the Foundation in Massachusetts and New Mexico and merge it with Sterling. The merger

would allow Sterling to acquire and control the Foundation's real estate and intellectual property. (*Id.*, ¶22, 31-32.)

34.    Lavender alleges RGO, Romero, and Ford accomplished the revival and merger by intentionally submitting fraudulent documents containing several misrepresentations, including that they were directors and officers of the Foundation. (*Id.*, ¶21, 26, 32.)

35.    Further, Ford and Romero allegedly submitted fraudulent annual reports to the Secretary of State of New Mexico from 2012 to 2019. (*Id.*, ¶38-39.)

36.    Lavendar alleges the Defendants intentionally acted to deprive the Foundation of its property by reviving and merging the Foundation with Sterling. (*Id.*, ¶22-23, 42-43.)

37.    Count I is for declaratory relief and alleges the merger in New Mexico is invalid because it contains "various willful fraudulent misrepresentations," including that Ford and Romero are directors of the Foundation and that the merger with Sterling in proper.  (*Id.*, ¶44-45.)[1]

38.    Count II is for misrepresentation and identity theft and alleges defendants "willfully, maliciously misrepresented" they had authority to list Lavendar in the application for revival in Massachusetts or cause the merger of the Foundation with Sterling. (*Id.*, ¶48-49, 52.)

39.    Count III is for commercial disparagement and alleges defendants published affidavits and applications to the New Mexico Secretary of State and the Secretary of State of the Commonwealth of Massachusetts disparaging the Foundation. Specifically, defendants intentionally made false statements about the Foundation in furtherance of their hostile take-over. (*Id.*, ¶58-59.)

40.    Count IV is for corporate identity theft and alleges they conspired to take control of the Foundation "for the purpose of controlling and distributing the land and other assets" of

---

[1] All counts in the New Mexico amended complaint are incorrectly numbered.

the Foundation. (*Id.*, ¶44.) Further, defendants willfully and intentionally appropriated the identity and good name of the plaintiffs without their consent. (*Id.*, ¶65, 68, 71-72.)

41.     Count V is for breach of fiduciary duty against the defendants alleges they owed a fiduciary duty to the Foundation, which they breached by using the names of the Foundation's board members in order to revive and merge it with Sterling. (*Id.*, ¶80, 83.) Defendants' actions were "false, fraudulent, and done in furtherance of a scheme, and conspiracy to take over the assets" of the Foundation. (*Id.*, ¶88.) Defendants also "knew and should have known" that their conduct was "false, fraudulent, and done in furtherance of a scheme. (*Id.*)

42.     Count VI is for civil conspiracy and alleges they conspired to take over the Foundation with the intent to deprive the Foundation of its mission. (*Id.*, ¶93-94.)

43.     Count VII is for copyright infringement and alleges the Foundation is the owner and distributor of the books, writings, and trademarks obtained by Ms. Wigmore and it alone is entitled to any profits or royalties. (*Id.*, ¶99-100.)

44.     Count VIII is for prima facie tort and alleges defendants conspired to take-over the Foundation and that their conduct was "willful and intentional." (*Id.*, ¶102, 104, 107-108.)

45.     Count IX is for breach of the duty of fair dealing and alleges defendants used the Foundation's confidential and trade secret information to merge it with Sterling. The unauthorized use of this information breached their duties to the plaintiffs. (*Id.*, ¶118, 125.)

46.     Count X is for violation of New Mexico's Trade Secrets Act and alleges defendants used the Foundation's confidential information for the purpose of acquiring the Foundation and its property. (*Id.*, ¶94, 97.)[2]

---

[2] Starting in this count, the paragraphs are incorrectly numbered.

47.     Count XI is for deceptive trade practices and alleges defendants misrepresented they had control or consent to merge the Foundation with Sterling. Further, defendants' actions were "willful, intentional, and… malicious." (*Id.*, ¶102, 104, 106.)

48.     Count XII is for declaratory relief and requests a finding that the Foundation should be reinstated and defendants should be stricken from the New Mexico records. (*Id.*, ¶113.)

49.     Count XIII is for tortious interference with contractual relations and alleges Lavender had an employment contract with the Foundation and defendants interfered with that contract.  (*Id.*, ¶117, 121.)

50.     Counts XIV to XVIII are for injunction against the New Mexico Secretary of State for the rescission of the reinstatement and merger of the Foundation with Sterling and against the other defendants to top using the Foundation's name. (*Id.*, Pg. 23- 27.)

51.     In addition to compensatory damages, plaintiffs seek exemplary damages, damages for misappropriation, punitive damages, attorney's fees, and treble damages against defendants. (*Id.*, Pg. 27.)

**Ford and RGO litigated and prevailed in the New Mexico action.**

52.     On November 10, 2019, RGO and Ford filed their answer, affirmative defenses, an counterclaim to the amended complaint. (*See Ans.*, attached as Ex. B.)

53.     On March 5, 2020, the New Mexico court entered a declaratory judgment finding that the revival and merger of the Foundation with Sterling were approved by the Secretary of State of the Commonwealth of Massachusetts. (*See Judgment*, attached as Ex. C.)

### THE RELATED LAWSUIT

54.     On June 17, 2020, the Foundation and Lavender ("Plaintiffs") sued RGO, RGA, Sterling, Ford, and the Secretary of State for the Commonwealth of Massachusetts in the United

States District court for the District of Massachusetts, in an action bearing Case No. 1:20-cv-11150-IT. Plaintiffs filed an amended complaint on September 29, 2020. (*See Am. Compl.*, attached as Ex. "D.")

55.    Like the New Mexico pleading, the crux of this amended complaint is that RGO, Ford, RGA, and Sterling conspired to take over the Foundation and its property "by false and fraudulent pretenses," all for their benefit. (*Id.*, ¶1.) For example, this pleading contains the following similar allegations:

**Lavendar attempts to sell the San Fidel property.**

56.    In November 2018, Ford expressed an interest in purchasing the San Fidel property so RGO, RGA, and Sterling could operate an addiction recovery center. (*Id.* ¶ 58, 60.)

57.    Plaintiffs allege that RGO, Ford, and RGA claim the parties reached an agreement to revive and merge the Foundation with Sterling, which she denies. (*Id.* ¶ 61-62.)

**Ford merged the Foundation with Sterling and acquired the San Fidel property.**

58.    On November 14, 2018, Ford in his individual capacity and on behalf of RGO, RGA, and Sterling applied to revive the Foundation's non-profit status in the Commonwealth of Massachusetts. (*Id.* ¶ 64.)

59.    Plaintiffs allege the revival application "contained knowingly false statements" for the benefit of Defendants. (*Id.* ¶ 65.)

60.    On December 3, 2018, RGO, Ford, RGA, and Sterling filed an annual report on behalf of the Foundation with the Commonwealth of Massachusetts. Plaintiffs allege this annual report was unauthorized and "fraudulently-filed." (*Id.* ¶ 66.)

61.    On December 27, 2018, Ford, on behalf of RGO, RGA, and Sterling filed an application to merge the Foundation with Sterling. (*Id.* ¶ 68.)

62.    Plaintiffs allege that the merger statement also contains false information, which was made with the intent to benefit the Defendants. (*Id.*)

63.    On December 26, 2018, Defendants "without any authority from" the Foundation used its letterhead and trademark "to write and send the Secretary's office" further fraudulent statements meant to induce the merger and termination of the Foundation.  (*Id.* ¶ 70.)

64.    As a result of the fraudulent filings, the merger was approved by Galvin. (*Id.*)

**Lavendar alleges the New Mexico lawsuit is related to the Massachusetts lawsuit against RGO, Ford, and RGA.**

65.    Lavendar alleges she previously sued RGO, Ford, and Sterling in New Mexico over whether the revival and merger of the Foundation with Sterling is valid. (*Id.* ¶72.)

66.    Count I violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") against defendants alleges they "conspired to form and did form an illegal Enterprise," a hostile take-over of the Foundation through fraud in order to gain control of its property and trademark. (*Id.* ¶76, 78, 95.) Plaintiffs allege the defendants committed "wire fraud" when they submitted the allegedly fraudulent applications for revival and merger to the Commonwealth of Massachusetts. (*Id.* ¶79-82.)

67.    Count I also alleges the Defendants violated RICO by (a) selling and distributing marijuana on the San Fidel property in violation of federal law, and (b) money laundering. (*Id.* ¶86, 90.)

68.    Count II for violation of the Lanham Act by Trademark Infringement alleges that in late 2018 Defendants began using the Foundation's name and property "in a way that infringes on this trademark and erodes this trademark value…."(*Id.* ¶106.)

69.    Count III for violation of the Lanham Act by False Endorsement/Sponsorship alleges that since late 2018, Defendants have been falsely implying the Foundation endorses the

use of marijuana, which creates a likelihood of confusion among the public. This confusion is damaging to the Foundation's "reputation" and "trademark." (*Id.* ¶111.)

70.     Count IV for Fraud/Constructive Trust alleges defendants knowingly made false statements in the revival and merger documents submitted to Galvin. The statements were made with the intent to "control and use" the Foundation's property, which requires a constructive trust over any property gained by the defendants. (*Id.* ¶114-117.)

71.     Count V for Conversion alleges that through defendants' knowingly false statements they acquired "ownership, control, and dominion" over plaintiffs' property. (*Id.* ¶120.)

72.     Count VI for Declaratory Judgment seeks a determination as to whether the defendants had authority to revive and reinstate the Foundation with Sterling, if not, whether a fraud occurred, which requires that the merger be set aside. (*Id.* ¶127-128.)

73.     As damages, plaintiffs seek injunctive relief, declaratory relief, a constructive trust, $2,000,000 in compensatory damages, treble damages, punitive damages, attorney's fees and costs.  (*Id.*, Pg. 37-38.)

## DEFENDANTS' MOTION TO DISMISS THE RELATED MASSACHUSETTS AMENDED COMPLAINT

74.      On October 14, 2020, defendants moved to dismiss the amended complaint. (*See Mot.*, attached as Ex. E.)

75.     The primary argument raised by defendants is that the claims asserted in the Massachusetts lawsuit must be dismissed because they were already decided by the court in the prior New Mexico Lawsuit: "Those issues are whether the merger between [the Foundation] and Sterling was valid, determining which parties are the directors…, and determining who is the rightful owner of certain real estate in New Mexico." (*Id.*, Pg. 2.)

76. Throughout their motion, defendants argue the Massachusetts lawsuit is related to the New Mexico lawsuit and all of the claims between the parties were decided in New Mexico in favor of the defendants. (*Id.*, Pg. 2-3, 7-10.)

77. According to RGO, Ford, and RGA, "Plaintiffs have brought the same claims against the same parties in two different jurisdictions. The first was filed in New Mexico state court. The matter pending before this Court [Massachusetts] is the second-filed action." (*Id.*, Pg. 3.)

## KINSALE'S INSURANCE POLICIES

78. Kinsale issued a claims made and reported Management Liability insurance policy to "R Greenleaf Organics Inc." as the Named Insured, bearing Policy No. 0100115703-0 and effective from 05/16/2020 through 05/16/2021. (*See Ins. to RGO*, attached as Ex. F.)

79. Ford and Romero are an "Insured Person" under this policy. (*Id.*, Pg. 19.)

80. The limit of insurance of the Directors & Officers Liability Coverage Section – Private Organization is $1,000,000 each claim and $1,000,000 aggregate limit. (*Id.*, Pg. 1.)

81. The insurance policy issued to RGO includes a Prior or Pending Litigation Date of 05/16/2020 under the D&O Liability Coverage Section. (*Id.*)

82. Kinsale also issued a claims made and reported Management Liability insurance policy to "Reynold Greenleaf & Associates LLC" as the Named Insured, bearing Policy No. 0100114506-0 and effective from 05/06/2020 through 05/06/2021. (*See Ins. to RGA*, attached as Ex. G.)

83. Ford and Romero are an "Insured Person" under this policy. (*Id.*, Pg. 19.)

84. The limit of insurance of the Directors & Officers Liability Coverage Section – Private Organization is $1,000,000 each claim and $1,000,000 aggregate limit. (*Id.*, Pg. 1.)

85.     The insurance policy issued to RGA includes a Prior or Pending Litigation Date of 05/06/2020 under the D&O Liability Coverage Section. (*Id.*)

86.     The principal coverage form (Form MLPDO0001 0917) of the policies provide in pertinent part:

## DIRECTORS & OFFICERS LIABILITY COVERAGE
## SECTION—PRIVATE ORGANIZATION

### SECTION I – COVERAGE

**A.      Insuring Agreement**

    **1.**     Side A - Individual Coverage: For an "insured person", we will pay "loss" that the "insured person" is obligated to pay for a "claim" for a "wrongful act", except when the "organization" or "subsidiary" indemnifies the "insured person."…

    **3.**     Side C - Private Organization Coverage: For the "organization" or "subsidiary", we will pay "loss", in excess of the Deductible that the "organization" is obligated to pay for a "claim" for a "wrongful act" by the "organization." …

    **5.**     This insurance applies only if:

        (a)     Prior to the effective date of this Policy, no "insured" had knowledge of any "wrongful act" that could reasonably give rise to the "claim" or "derivative demand" made under this Policy; …

        (c)     The "claim"… is not based on, does not arise out of, directly or indirectly result from or in any way involve any "claim"… as of the Prior or Pending Litigation Date shown in the Declarations as applicable to this Coverage Section; …

        (e)     The "claim"… is first made against the "insured" during this "policy period" and is reported to us in writing during this "policy period" or within an Extended Reporting Period, if applicable. …

**B.      Defense and Settlement**

1.  We have the right and duty to defend the "insured" against a covered "claim." However, we have no duty to defend the "insured" against any "claim" to which this insurance does not apply. We may, at our discretion, investigate any potential "claim."

**C.**   **Multiple Claims**

All "claims" for "damages" to the same person or entity will be deemed to have been made on the date when the first of all such logically or causally connected "claims" was made against any "insured." All "wrongful acts" that are logically or causally connected by any common fact, circumstance, situation, transaction, event, service, advice or decision will be considered one "wrongful act" and will be deemed to have taken place at the time the first of these related "wrongful acts" took place. All "claims" based upon such logically or causally connected "wrongful acts" shall be deemed to constitute a single "claim" and be subject to a single limit of insurance – each claim. …

**SECTION II – DEFINITIONS**

Defined terms applicable to this Coverage Section are defined below and appear in quotation marks throughout this Coverage Section.  …

**B.**   "Claim" means:
1.  A written demand, other than a "derivative demand", for monetary or non-monetary relief;

2.  A civil proceeding that is commenced by service of a complaint or similar pleading; …

**D.**   "Damages" means any compensatory amount an "insured" is legally obligated to pay for a "claim" to which this Coverage Section applies, including judgments, awards and settlements. …

**I.**   "Insured" means the "organization", "subsidiary", and any "insured person".

**J.**   "Insured person" means any duly elected or appointed "executive", or "employee" of the "organization" or "subsidiary". "Insured person" includes the heir, executor, administrator and legal representative of each "insured person", in the event of death, incompetency or bankruptcy of such "insured person", but only for liability arising out of any actual or alleged "wrongful act" of the "insured person". …

**L.**    "Loss" means "damages" and "defense costs"; however, "loss" shall not include:

1.  Any criminal or civil fine, penalty, tax or sanction of any type against any "insured";

2.  Equitable or non-pecuniary relief;

3.  Any matter or amount that is uninsurable by law;

5.   Any sum, amount or payment that constitutes restitution or disgorgement; or

6.  Punitive or exemplary damages, or the multiplied amount of any damages. …

## SECTION III – EXCLUSIONS

This Coverage Section does not apply to any "claim" for "loss":

**A.**    Based upon, arising out of, or attributable to any actual or alleged contractual liability of the "insured" under any express contract or agreement. …

**E.**    Based upon, arising out of or in any way involving:

1.  Any "insured" gaining any profit, advantage or remuneration to which they were not legally entitled; or

2.  Any "insured's" criminal act, fraudulent act, dishonest act, or intentional act, error, omission or offense committed with knowledge of its wrongful nature.

For the purpose of applying this exclusion, the "wrongful act" of any "insured" shall not be imputed to any other "insured". …

**H.**    Based upon, arising out of or in any way involving any actual or alleged access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information. This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by an "insured" or others arising out of any access to or disclosure of any person's or organization's confidential or personal information. …

**J.**     Based upon, arising out of or in any way involving any actual or alleged "wrongful acts" of any "insured person" in their capacity as a director, officer, trustee, regent, governor, member of the board or equivalent position of an entity other than the "organization", "subsidiary" or "outside entity." …

**N.**     Based upon, arising out of or in any way involving any actual or alleged violation of any of the following…

    5)  The Racketeer Influenced and Corrupt Organization Act 18 USC Sections 1961; or

**O.**     Based upon, arising out of or in any way involving any actual or alleged infringement of copyright, patent, trademark, service mark, right of publicity, slogan, trade dress, trade secret or other intellectual property rights; or false advertising, false designation of origin, product disparagement, trade libel, or other causes of action arising out of unfair competition; or violation of any law, statute or ordinance of any federal, state or municipal government or any agencies thereof, including violations of the Lanham Act or other unfair competition statutes. This exclusion shall also apply to "derivative demands". …

## SECTION V – DIRECTORS & OFFICERS LIABILITY COVERAGE SECTIONS CONDITIONS

**Other Insurance**

This Coverage Section's insurance shall be excess over any other applicable insurance, deductible or self-insured retention, whether such insurance, deductible, or self-insured retention is contributory, excess, primary or otherwise, unless such insurance, deductible or self-insured retention specifically applies in excess of any limit of insurance for this Policy or any Coverage Section.

In the event a "claim" is made against any "insured person" arising out of their service as officer, director, trustee, regent, governor or member of the board of managers of an "outside entity," any coverage under this Policy shall be excess of any indemnification provided by the "outside entity" and excess of any insurance available to the "insured person" from the "outside entity."

## <u>COUNT I – NO COVERAGE UNDER THE PRIOR AND PENDING LITIGATION DATE</u>

87.     Kinsale incorporates paragraphs 1 through 86.

88.     The New Mexico lawsuit against RGO and Ford was filed on December 21, 2018. (*See* Ex. A.)

89.     The Massachusetts lawsuit against RGO, Ford, and RGA was filed on June 17, 2020. (*See* Ex. B.)

90.     It is undisputed the Massachusetts lawsuit is based upon, arises out of, directly or indirectly results from or in any way involves the New Mexico claim as of the Prior or Pending Litigation Dates of (a) 05/06/2020 under the policy issued to RGA and (b) 05/16/2020 under the policy issued to RGO. (*See* Ex. E.)

91.     The Prior or Pending Litigation Provision under the Insuring Agreements of the D & O Liability Coverage Section of each policy is not satisfied. (*See* Ex. F-G, Pg. 17.)

92.     Kinsale accordingly has no duty to defend or pay any damages on behalf of RGO, Ford, or RGA in the underlying lawsuits.

## COUNT II – NO COVERAGE UNDER THE PRIOR KNOWLEDGE PROVISION

93.     Kinsale incorporates paragraphs 1 through 86.

94.     The New Mexico lawsuit against RGO and Ford was filed on December 21, 2018. (*See* Ex. A.)

95.     Prior to 05/06/2020, RGA and Ford had knowledge of a wrongful act that could reasonably give rise to a claim made under the insurance policy issued to RGA, *i.e.*, the Massachusetts lawsuit. (*See* Ex. E.)

96.     Prior to 05/16/2020, RGO and Ford had knowledge of a wrongful act that could reasonably give rise to a claim made under the insurance policy issued to RGO, *i.e.*, the Massachusetts lawsuit. (*Id.*)

97.     The Prior Knowledge Provision under the Insuring Agreements of the D & O Liability Coverage Section of each policy is not satisfied. (*See* Ex. F-G, Pg. 17.)

98.     Kinsale accordingly has no duty to defend or pay any damages on behalf of RGO, Ford, or RGA in the related Massachusetts lawsuits.

<u>**COUNT III – NO COVERAGE UNDER THE CLAIMS MADE**</u>
<u>**PROVISION OF THE INSURING AGREEMENTS**</u>

99.     Kinsale incorporates paragraphs 1 through 86.

100.    The New Mexico lawsuit against RGO and Ford was filed on December 21, 2018. (*See* Ex. A.)

101.    It is undisputed that the Massachusetts lawsuit is logically or causally connected to the New Mexico lawsuit. (*See* Ex. D-E.)

102.    Under the Multiple Claims provision of Kinsale's policies, the Massachusetts lawsuit against RGO, Ford, and RGA is deemed to have been made on the date when the New Mexico lawsuit was made against RGO and Ford, December 21, 2018. (*See* Ex. F-G, Pg. 19.)

103.    Section 5(d) of the Insuring Agreement under the D & O Liability Coverage Section of each policy is not satisfied, because the Massachusetts lawsuit was not first made against RGO, Ford, or RGA during the respective policy periods of the insurance policies issued to RGO and RGA. (*Id.*, Pg. 17.)

104.    Kinsale accordingly has no duty to defend or pay any damages on behalf of RGO, Ford, or RGA in the Massachusetts lawsuit.

<u>**COUNT IV – NO COVERED "LOSS"**</u>

105.    Kinsale incorporates paragraphs 1 through 86.

106.    The insurance policies define "loss" as "damages" and "defense costs" but not any "criminal or civil fine, penalty… equitable or non-pecuniary relief; any sum, amount or

payment that constitutes restitution or disgorgement… or punitive or exemplary damages, or the multiplied amount of any damages." (*See* Ex. F-G, Pg. 19.)

107.    The underlying amended complaints seek non-monetary relief, punitive damages, treble damages, civil penalties, and/or the disgorgement of damages. (*See* Ex. A, D.)

108.    Accordingly, the Insuring Agreement of the D & O Liability Coverage Section of each policy is not satisfied and Kinsale does not have a duty to defend or pay an award against RGO, Ford, Romero, and RGA for non-insurable "loss."

## COUNT V – NO COVERAGE UNDER THE GAIN OF PROFIT EXCLUSION

109.    Kinsale incorporates paragraphs 1 through 86.

110.    Exclusion E(1) of the policies bars coverage for any claim for loss "based upon, arising out of or in any way involving any insured gaining any profit, advantage or remuneration to which they were not legally entitled." (*See* Ex. F-G, Pg. 20.)

111.    The amended complaints in the underlying lawsuits allege RGO, Ford, Romero, and RGA fraudulently obtained control over and acquired the Foundation, including the San Fidel property and other intellectual property for their own benefit. (*See* Ex. A, D.)

112.    Further, RGO, Ford, Romero, and RGA, and Sterling are not legally entitled to the Foundation or its property. (*Id*.)

113.    Kinsale accordingly has no duty to defend or pay any damages on behalf of RGO, Ford, Romero, or RGA Ford in the underlying lawsuits.

## COUNT VI – NO COVERAGE UNDER THE FRAUDULENT, DISHONEST, OR INTENTIONAL ACTS EXCLUSION

114.    Kinsale incorporates paragraphs 1 through 86.

115.    Exclusion E(2) of the policies bars coverage for any claim for loss based upon, arising out of, or in any way involving any insured's "criminal act, fraudulent act, dishonest act, or intentional act, error, omission or offense committed with knowledge of its wrongful nature. (*See* Ex. F-G, Pg. 20.)

116.    The amended complaints in the underlying actions allege RGO, Ford, Romero, and RGA intentionally and willfully conspired to perpetrate a fraudulent takeover of the Foundation and its property, including by submitting revival and merger documents with the Secretaries of State for New Mexico and the Commonwealth of Massachusetts containing numerous "false and fraudulent statements." (*Id.*)

117.    The Massachusetts amended complaint also alleges RGO, Ford, and RGA are engaging in the illegal sale and distribution of marijuana in violation of the Controlled Substances Act under 21 U.S.C. § 841 and are engaging in money laundering in violation of 18 U.S.C. §1957. (*See* Ex. D, ¶9.)

118.    Kinsale accordingly has no duty to defend or pay any damages on behalf of RGO, Ford, Romero, or RGA in the underlying lawsuits.

<u>**COUNT VII – NO COVERAGE UNDER THE**</u>
<u>**RICO EXCLUSION**</u>

119.    Kinsale incorporates paragraphs 1 through 86.

120.    Exclusion N(5) of the policies bars coverage for any "claim" or "loss" "[b]ased upon, arising out of or in any way involving any actual or alleged violation of any of the following [t]he Racketeer Influenced and Corrupt Organization Act 18 USC Sections 1961." (*See* Ex. F-G, Pg. 21.)

121.    Count I of the amended complaint in the Massachusetts lawsuit alleges that RGO, Ford, and RGA violated RICO under 18 U.S.C. § 1961-1968 by a pattern of racketeering activity

designed to take over the Foundation and its property, including wire fraud, money laundering, and the illegal sale and distribution of marijuana. (*See* Ex. D ¶¶75-101.)

122.    Accordingly, if a judgment is entered against RGO, Ford, or RGA under Count I, Kinsale has no duty to defend or pay any damages on behalf of the insureds in the Massachusetts lawsuit.

## COUNT VIII - NO COVERAGE UNDER THE
## OUTSIDE ENTITY EXCLUSION

123.    Kinsale incorporates paragraphs 1 through 86.

124.    Exclusion J of the policies bars coverage for any claim "[b]ased upon, arising out of or in any way involving any actual or alleged "wrongful acts" of any "insured person" in their capacity as a director, officer, [or] member of the board or equivalent position of an entity other than the "organization", "subsidiary" or "outside entity." (*See* Ex. F-G at Pg. 21.)

125.    The amended complaints in the New Mexico and Massachusetts lawsuit allege that Ford and Romero, individually and on behalf of RGO, RGA, and Sterling conspired to take-over the Foundation and its property by submitting revival and merger documents containing false and fraudulent representations. (*See* Ex. A, D.)

126.    Further, the amended complaint in the New Mexico lawsuit alleges that Ford and Romero breached their duties as directors of the Foundation. (*See* Ex. A, Pg. 14-15.)

127.    Sterling does not qualify as the "organization," "subsidiary" or "outside entity" under the Kinsale policies. Sterling is a separate legal entity.

128.    Accordingly, if a judgment is entered against Ford and/or Romero in their capacities as directors or officers of Sterling and/or the Foundation, Kinsale has no duty to defend or pay any damages on behalf of Ford or Romero in the underlying lawsuits.

## COUNT IX – NO COVERAGE UNDER THE
## INFRINGEMENT EXCLUSION

129.    Kinsale incorporates paragraphs 1 through 86.

130.    Exclusion O of the policies bars coverage for any "claim" or "loss" "[b]ased upon, arising out of or in any way involving any actual or alleged infringement of copyright, patent, trademark… or other intellectual property rights… or violations of the Lanham Act or any unfair competition statutes." (*See* Ex. F-G, Pg. 21.)

131.    The amended complaint in the New Mexico lawsuit alleges that RGO, Ford, and Romero committed copyright infringement by claiming ownership of the Foundation's intellectual property. (*See* Ex. A ¶97-100.) The defendants also allegedly committed commercial disparagement, engaged in deceptive trade practices, and violated New Mexico's Trade Secret Act. (*Id.*, ¶ 58-59, 94-97, 102-106.)

132.    The amended complaint in the Massachusetts lawsuit alleges that the Foundation's name is "trademarked" and it owns LivingFoodsLifestyle® trademark. (*See* Ex. D ¶2.)

133.    Further, RGO, Ford, and RGA allegedly violated the Lanham Act by "promoting the AWF name and property in a way that infringes on this trademark and erodes this trademark value…." (*Id.*, ¶105-106.) The defendants also falsely implied that the Foundation endorses the use of marijuana, which creates a likelihood of confusion and damages the Foundation's trademark. (*Id.* ¶111.)

134.    Accordingly, Kinsale has no duty to defend or pay damages on behalf of RGO, RGA, Romero, and Ford in the underlying lawsuits.

## COUNT X - NO COVERAGE UNDER THE
## CONFIDENTIAL INFORMATION EXCLUSION

135.     Kinsale incorporates paragraphs 1 through 86.

136.     Exclusion H of the policies bars coverage for any claim for loss "based upon, arising out of, or in any way involving any actual or alleged access to or disclosure of any… organization's confidential… information…." (*See* Ex. F-G, Pg. 20.)

137.     The amended complaint in the New Mexico lawsuit alleges RGO, Ford, and Romero acquired and used the Foundation's confidential and trade secret information in the application for revival and merger, which was a breach of their fiduciary duties to the plaintiffs. (*See* Ex. A, ¶118-124.)

138.     Accordingly, Kinsale has no duty to defend or pay damages on behalf of RGO, Romero, and Ford in the New Mexico lawsuit.

## COUNT XI – NO COVERAGE UNDER THE
## CONTRACT EXCLUSION

139.     Kinsale incorporates paragraphs 1 through 86.

140.     Exclusion A of the policies bars coverage for any claim for loss "based upon, arising out of, or attributable to any actual or alleged contractual liability of the "insured" under any express contract or agreement." (*See* Ex. F-G, Pg. 20.)

141.     Count XIII of the amended complaint in the New Mexico action alleges Lavender had an employment contract with the Foundation and defendants interfered with that contract. (*See* Ex. A, ¶117, 121.)

142.     The amended complaint in the Massachusetts action alleges that RGO, Ford, and RGA claim they had an "agreement" with the plaintiffs to revive and merge the Foundation with Sterling. (*See* Ex. D ¶61.)

143.   Accordingly, Kinsale has no duty to defend or pay damages on behalf of RGO, Ford, Romero, or RGA.

## COUNT XII – NO COVERAGE FOR
## FORD AND ROMERO BECAUSE THEY ARE NOT INSURED PERSONS

144.   Kinsale incorporates paragraphs 1 through 86.

145.   Side A – Individual Coverage of the Directors & Officers Liability Coverage Section of the policies provides that for "an "insured person" [Kinsale] will pay "loss" that the "insured person" is obligated to pay for a "claim" for a "wrongful act"…."

146.   The policies define "Insured Person" as "any duly elected or appointed "executive," or "employee" of the "organization" or "subsidiary.""…

147.   Sterling does not qualify as an "organization" or "subsidiary" under the policies.

148.   The amended complaint in the New Mexico action alleges Ford owns Sterling. (*See* Ex. A ¶22.) Further, Ford and Romero allegedly breached their fiduciary duties as directors of the Foundation. (*Id.*, Pg. 14-15.)

149.   The amended complaint in the Massachusetts action alleges Ford was acting in combination with Sterling and his actions were intended to benefit Sterling. (*See* Ex. D ¶20.) Further, Ford on behalf of Sterling filed the articles of merger containing false statements with the intent to benefit Sterling. (*Id.* ¶68.)

150.   Accordingly, to the extent that a judgment is entered against Ford and/or Romero in their capacities as directors, officers, executives, or employees of Sterling and/or the Foundation, Kinsale has no duty to defend or pay any damages on behalf of Ford or Romero.

## COUNT XII – ALTERNATIVELY, KINSALE'S POLICIES ARE
## EXCESS TO ANY OTHER AVAILABLE COVERAGE

151.   Kinsale incorporates paragraphs 1 through 86.

152.    The Other Insurance provision of the policies provides that coverage under the D
& O Liability Coverage Section "shall be excess over any other applicable insurance, deductible
or self-insured retention… In the event a "claim" is made against any "insured person" arising
out of their service as officer, director… or member of the board of managers of an "outside
entity,"" coverage under Kinsale's policy "shall be excess of any indemnification provided by
the "outside entity" and excess of any insurance available to the "insured person" from the
"outside entity.""

153.    To the extent RGO, Ford, Romero, or RGA have any other applicable insurance
coverage the Kinsale policies is excess of those policies.

## <u>REQUESTED RELIEF</u>

Kinsale respectfully requests that this Court:

a.      Take jurisdiction and adjudicate the rights of the parties under the Kinsale
insurance policies;

b.      Find and declare that Kinsale has no obligation to defend RGO, Ford,
Romero, or RGA in the underlying lawsuits;

c.      Find and declare that Kinsale has no obligation to pay any damages on
behalf of RGO, Ford, Romero, or RGA in the underlying lawsuits;

d.      Award Kinsale all costs incurred to prosecute this action, as well as any
other relief that this Court deems, equitable, just, and proper.

Respectfully submitted,

_____/s/ Kevin C. McCaffrey
MA Bar No. 666052
Kevin.mccaffrey@clydeco.us
CLYDE & CO US LLP
405 Lexington Avenue, 16th Floor
New York, NY 10174
*Counsel for Plaintiff Kinsale Insurance
Company*